**Affirmed as Modified; and Opinion Filed July 29, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01286-CR

### TROY NEAL HOOPER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1271997-R**

## MEMORANDUM OPINION

Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Lang

A jury convicted Troy Neal Hooper of delivery of cocaine in an amount of one gram or more, but less than four grams. Also, the jury found the offense occurred in a drug-free zone and an enhancement paragraph true that alleged Hooper had been previously convicted of theft of person. Then, the jury assessed punishment at fifteen years' confinement and a $2500 fine. In four issues, Hooper contends (1) the trial court erred in failing to instruct the jury on the defense of entrapment; (2) the evidence is insufficient to support the jury's finding that the offense occurred in a drug-free zone; (3) because the drug-free zone finding is not supported by sufficient evidence, the jury was improperly instructed on the punishment range; and, (4) the trial court's judgment incorrectly reflects he was convicted of a first degree felony offense and should

be modified to reflect the correct degree of the offense as a second degree felony. We modify the trial court's judgment and, as modified, affirm.

## I. BACKGROUND

Hooper was charged with the offense after he allegedly delivered two baggies containing 1.22 grams of cocaine to undercover officers Lucio Cano and Tyrone Wall. The offense occurred in an apartment complex, which fell, in part, within the drug-free zone of a nearby middle school.

At trial, Cano and Wall testified they were working undercover in an area known for "narcotics trafficking" when they noticed Hooper. According to Cano, Hooper was "flagging cars down" and approached them. According to Wall, Hooper was walking when they approached him. Both officers testified that, after "some general talk," they asked Hooper where they could buy powder cocaine. Hooper responded he knew a dealer, made a telephone call, and "set up a deal." Hooper then entered the officers' car and directed them to the apartment complex. They parked "to the rear of th[e] complex" where Cano gave Hooper $100 for the cocaine. Hooper left the car, walked through a breezeway, and was out of sight for "a couple of minutes" before returning with the two baggies of cocaine. Cano and Wall "tipped" Hooper $20 "for facilitating the deal" and left.

Neither Cano nor Wall testified the offense occurred in a drug-free zone, but Wall pointed to an area on a map indicating where the offense "approximately" occurred. The map depicted the boundaries of the apartment complex in yellow, the boundaries of the school in green, and the boundaries of the school's drug-free zone in red. It was displayed on a screen for the jury during Wall's testimony. The same map was admitted into evidence.

Hooper did not testify or call any witnesses at the guilt-innocence stage of trial. However, he requested a jury instruction on the defense of entrapment based on Wall's

testimony that he and Cano initiated the contact. His request was denied. Hooper did not testify or call any witnesses at punishment, but stipulated to the punishment enhancement paragraph that alleged the conviction for felony theft of person.

## II. ENTRAPMENT

Hooper's first issue complains of the trial court's denial of his request that the jury be charged on the defense of entrapment. In arguing this issue, Hooper contends there is no evidence in the record that shows Cano and Wall "were privy to any information regarding [his] interest in making money or engaging in drug deals." He argues this lack of evidence demonstrates "the criminal intent originated" in the officers' minds. Further, he argues Wall's testimony that he initiated the contact and he and Cano gave a $20 tip demonstrates they induced him to deliver the cocaine.

### A. Applicable Law and Standard of Review

Upon proper request, a defendant is entitled to a jury instruction on every defensive issue raised by the evidence. See TEX. PENAL CODE ANN. § 2.03(c) (West 2011); *Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984). In determining whether the evidence raises a defense, an appellate court must consider all the evidence presented at trial, regardless of its strength or source. *Reese v. State*, 877 S.W.2d 328, 333 (Tex. Crim. App. 1994).

The defense of entrapment is available "when the criminal design or intent originates in the mind of a law enforcement officer or his agent," and the officer or agent leads the defendant to commit a crime he would not otherwise commit. *See Richardson v. State*, 622 S.W.2d 852, 854 (Tex. Crim. App. [Panel Op.] 1981). This defense is codified in section 8.06 of the Texas Penal Code and allows an acquittal upon a prima facie showing by the defendant that (1) he engaged in the conduct charged (2) because he was induced to do so by a law enforcement agent (3) who used persuasion or other means (4) which were likely to cause a person to commit the

offense. *See* TEX. PENAL CODE ANN. § 8.06(a); *Hernandez v. State*, 161 S.W.3d 491, 497 (Tex. Crim. App. 2005). The defense has both subjective and objective elements. *England v. State*, 887 S.W.2d 902, 911 (Tex. Crim. App. 1994). Subjectively, some evidence must exist that the defendant "was actually induced to commit the charged offense by the persuasiveness of the police conduct." *Id.* at 913 n.10. Objectively, some evidence must exist that the persuasion used "was such as to cause an ordinarily law-abiding person of average resistance nevertheless to commit the offense." *Id.* at 914. Such persuasion includes pleas based on extreme need, sympathy, pity, or close personal friendship; offers of inordinate sums of money; and, other methods likely to cause the otherwise unwilling person, rather than the ready, willing, and anxious person, to commit an offense. *Ramos v. State*, 632 S.W.2d 688, 691 (Tex. App.—Amarillo 1982, no pet.). Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment. TEX. PENAL CODE ANN. § 8.06(a).

*B. Application of Law to Facts*

Considering all the evidence presented at trial, we cannot agree with Hooper that the record reflects "the criminal intent originated" in the officers' minds and they induced him to "set up the deal." The record reflects when Wall and Cano inquired about buying cocaine, Hooper responded he knew a dealer, made a telephone call, "set up the deal," and then entered the officers' car and directed them to the apartment complex where the "deal" occurred. Hooper, in fact, willingly and without hesitation responded to Wall's and Cano's inquiry about buying cocaine. There is no evidence that shows Hooper's actions were in response to an offer of an inordinate sum of money, persistent attempts for help, a "plea based on extreme need, sympathy, or pity," or even the $20 tip he received. *See Ramos*, 632 S.W.2d at 691. On the record before us, we conclude the officers' conduct merely afforded Hooper an opportunity to commit the offense and did not, either alone or with any other evidence, raise the defense of entrapment. We

further conclude, because the defense of entrapment was not raised, the trial court did not err in refusing to instruct the jury on the defense. *See* TEX. PENAL CODE ANN. § 2.03; *Booth*, 679 S.W.2d at 500. Hooper's first issue is decided against him.

## III. DRUG-FREE ZONE

Hooper's second and third issues stem from the jury's finding that the offense occurred in a drug-free zone. The record shows only a portion of the apartment complex fell within the school's drug-free boundary, and no witness specifically testified the offense occurred within that zone. Further, Hooper asserts the record does not reflect where Wall pointed on the map. Accordingly, he challenges the sufficiency of the evidence to support the jury's finding. Because a drug-free zone finding increases the minimum term of imprisonment by five years, he also challenges the trial court's instruction to the jury on punishment. That instruction provided as follows:

> If you answer "true" to Prior Enhancing Conviction, you will assess the Defendant's punishment at confinement in the Institutional Division of the Criminal Justice System for a period of not less than ten (10) years and not more than ninety-nine (99) years or life, and in addition, you may assess a fine not to exceed $20,000.

Hooper asserts that, because the jury's finding is not supported by the evidence, the charge should have instructed the jury that the minimum term of confinement was five years.

*A. Applicable Law*

A defendant is entitled to a correct instruction on the range of punishment attached to an offense as determined by the class and degree of the offense and any enhancement allegations. *See* TEX. PENAL CODE ANN. ch. 12 (West 2011 & 2014); *Jones v. State*, 300 S.W.3d 93, 101 (Tex. App.—Texarkana 2009, no pet.). Under the Texas Health and Safety Code, the offense of delivery of cocaine in an amount of one gram or more, but less than four grams is a second degree felony punishable by a term of confinement of not less than two years and not more than

twenty years and a fine not to exceed $10,000. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.112(a),(c) (West 2010); TEX. PENAL CODE ANN. § 12.33 (West 2011). However, the punishment range is enhanced to that of a first degree felony, punishable by confinement for life or a term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000 when, as here, the defendant has been finally convicted of a felony other than a state jail felony. *See* TEX. PENAL CODE ANN. §§ 12.32, 12.42(b) (West Supp. 2014). Under section 481.134(c) of the health and safety code, the minimum term of confinement is further increased by five years, making the minimum term ten years, and the maximum fine doubled, making it $20,000, upon a showing the offense was committed in a drug-free zone. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(c) (West Supp. 2014); *Williams v. State*, 127 S.W.3d 442, 445 (Tex. App.—Dallas 2004, pet. ref'd) (recognizing Amarillo court of appeals' holding in *Hastings v. State*, 20 S.W.3d 786, 791 (Tex. App.—Amarillo 2000, pet. ref'd) that "five-year increase [under section 481.134(c)] is properly added to the minimum term of confinement after enhancement paragraphs under section 12.42 of the penal code are taken into account."). To establish a drug-free zone allegation, the State must prove beyond a reasonable doubt the offense occurred "in, on, or within 1,000 feet of the premises of a school." *See id.*; *Young v. State*, 14 S.W.3d 748, 753 (Tex. Crim. App. 2000).

### B. Standard of Review

An appellate court reviews the sufficiency of the evidence to support a drug-free zone enhancement finding under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Young*, 14 S.W.3d 748 at 753; *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (concluding *Jackson* standard is only standard reviewing courts should apply in determining sufficiency of evidence to support each element of offense State is required to prove beyond reasonable doubt). Under the *Jackson* standard, the appellate court reviews all the

evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found, beyond a reasonable doubt, that the offense occurred within 1,000 feet of the school. *Young*, 14 S.W.3d at 753. In conducting this review, the appellate court must defer to the jury's determination of the witnesses' credibility and the weight to give their testimony. *Jackson*, 443 U.S. at 319, 326. This is so because the jury, being present to hear the testimony and observe the witnesses' demeanor and any physical demonstrations or gestures, is in a better position to judge credibility than the appellate court reviewing a cold record which may or may not reflect the nonverbal behavior of a witness. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Morales v. State*, 293 S.W.3d 901, 909 (Tex. App.—Texarkana 2009, pet. ref'd).

### C. Application of Law to Facts

Viewing the evidence in the light most favorable to the verdict, we conclude the jury could have found beyond a reasonable doubt that Hooper committed the offense in the school's drug-free zone. Although the record does not reflect exactly where Wall pointed on the map when he testified as to the location of the drug transaction, the record shows the map was displayed to the jury as Wall testified and pointed. Further, the map identified the boundaries of the apartment complex in yellow and the boundaries of the school's drug-free zone in red. The jury was able to view the map and observe Wall's gestures and demeanor as he indicated the location where the "deal" occurred. By finding the offense occurred in a drug-free zone, the jury necessarily believed Wall pointed to a location within the red perimeter on the map. We will not disturb that determination. *See Jackson*, 443 U.S. at 319, 326; *see also Morales*, 293 S.W.3d at 909 (deferring to jury's finding that appellant guilty of assaulting public servant where jury observed physical demonstration of encounter between appellant and officer, even though demonstration not explicitly transcribed or detailed in record); *Rogers v. State*, 756 S.W.2d 332,

–7–

337 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (concluding gestures and demonstrations during testimony as to how appellant held his hand during robbery supported finding of guilt, even though specific gestures and demonstration not described in record). We resolve Hooper's second issue against him.

Having resolved Hooper's second issue against him, we also resolve Hooper's contention in his third issue that, because the finding is unsupported by sufficient evidence, the jury was improperly instructed on punishment.

## IV. MODIFICATION OF JUDGMENT

Hooper's final issue correctly asserts the trial court's judgment should be modified to reflect the degree of the offense was a second degree felony instead of a first degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c). An appellate court has the authority to modify an incorrect judgment to make the record speak the truth. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we decide this issue in Hooper's favor and modify the judgment to reflect the correct degree of the offense as a second degree felony. Because the judgment also incorrectly recites "N/A" in the sections entitled "Plea to 1st Enhancement Paragraph" and "Findings on 1st Enhancement Paragraph," we further modify the judgment to reflect "True" in each of those sections.

## V. CONCLUSION

As modified, we affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131286F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

TROY NEAL HOOPER, Appellant

No. 05-13-01286-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1271997-R.
Opinion delivered by Justice Lang. Justices Stoddart and Schenck participating.

Based on the Court's opinion of this date, we **MODIFY** the section of the trial court's judgment entitled "Degree of Offense:" to reflect "**2nd DEGREE FELONY**." We further modify the sections of the judgment entitled "Plea to 1st Enhancement Paragraph" and "Findings on 1st Enhancement Paragraph" to reflect "True" instead of "N/A."

As **MODIFIED**, we **AFFIRM** the trial court's judgment.

Judgment entered this 29th day of July, 2015.